SLIP OPINION

Cite as 2015 Ark. App. 222

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-14-756

| | |
|---|---|
| HARVEY LAMAR LEWIS | Opinion Delivered April 8, 2015 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NOS. CR-09-344, CR-11-873] |
| STATE OF ARKANSAS | HONORABLE J. MICHAEL FITZHUGH, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**M. MICHAEL KINARD, Judge**

Appellant Harvey Lewis appeals from the revocation of his suspended imposition of sentence (SIS). He argues that there was insufficient evidence that he violated the conditions of his SIS. We affirm.

On August 19, 2009, in case No. CR-2009-344, appellant entered a negotiated plea of guilty to theft by receiving, a Class C felony, and was sentenced to ten years' SIS. He was also ordered to pay restitution of $1492.75 at the rate of $50 per month beginning ninety days after his release from imprisonment on other convictions. On September 30, 2011, in case No. CR-2011-873, appellant entered a negotiated guilty plea to residential burglary, a Class B felony, and was sentenced as a habitual offender to fifteen years' imprisonment and ten years' SIS. He was ordered to pay restitution of $1000 at the rate of $55 per month beginning sixty days after his release.

SLIP OPINION

On June 25, 2014, the State filed a petition to revoke in both cases, alleging that on June 22, 2014, appellant had committed aggravated robbery. The State also alleged that appellant had failed to pay his restitution in the 2009 case, leaving an unpaid balance of $1492.75.

At the beginning of the revocation hearing, appellant's fine and restitution ledgers from several cases were admitted into evidence without objection. The ledger for CR-2009-344 showed that appellant had made no payments toward his $1492.75 restitution. Regarding the aggravated-robbery allegation, Jill Potts testified that on the night of June 22, 2014, she met with Stevey Estavon West at a mini mart to purchase Xanax from him. Potts got into the backseat of a car driven by West. Appellant was in the front passenger seat and was introduced to Potts as "Tyson." Potts was talking to West when appellant turned around and pointed a gun at her face. She said that appellant grabbed her cell phone, bag, and money and said, "[B]itch, you got any more money on you?" She replied that she did not, and he ordered her out of the car.

On cross-examination, Potts admitted that she did not tell the police that she had met with West to buy drugs until the police suggested that. She said that she did not remember the name Tyson when she initially talked to the police, but she later found the name Darnell Anderson when looking at West's Facebook account. Potts believed Darnell Anderson was Tyson's real name and reported this to the police. However, Potts said that a woman named Summer Jackson later told her that Tyson and Darnell Anderson were not the same person.

Potts later identified appellant in a photo lineup, and she testified that she was certain that "Tyson" was appellant.

Detective Jeff Carter testified that, after speaking with Jackson, Potts reported the name Tyson Anderson to him. Carter testified that Potts had assumed this man shared the last name of his brother, Darnell Anderson. Carter was familiar with appellant, who also went by Harvey Tyson Lewis, and Carter knew him to be Darnell Anderson's brother. Carter conducted a photo lineup including appellant, and Potts identified appellant as the man who had robbed her. When Carter interviewed appellant after his arrest, appellant initially denied knowledge of the robbery and indicated that it was probably his brother, Darnell Anderson. After Carter told appellant that a video showed him at the mini mart in the car, appellant admitted being there but said that West was the one who had robbed the woman. The trial court found by a preponderance of the evidence that appellant had violated the conditions of his SIS on both grounds alleged. Appellant was sentenced to fifteen years' imprisonment in CR–2011–873 and ten years' SIS in CR–2009–344.

Arkansas Code Annotated section 16-93-308(d) (Supp. 2013) provides that, if a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his suspension, the court may revoke the suspension at any time prior to the time it expires. Evidence that is insufficient for a criminal conviction may be sufficient for the revocation of a suspended sentence. *Sherril v. State*, 2014 Ark. App. 411, 439 S.W.3d 76. The State bears the burden of proof, but need only prove that the defendant committed one violation of the conditions. *Id.* On appeal, the trial court's decision will not be reversed

unless it is clearly against the preponderance of the evidence. *Id*. Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the trial court's superior position. *Id*.

Appellant argues that the trial court erred in believing Potts's testimony because her admission that she was trying to buy drugs gave her reason to lie. He also claims that the trial court should have rejected her testimony because she initially failed to tell the police that she was there for a drug deal; she gave the police the name of another man; she learned appellant's name from a friend; and she gave inconsistent testimony on whether she told police that she identified Darnell Anderson from Facebook.

Appellant's arguments are without merit. As noted previously, we defer to the trial court's superior position to resolve matters of witness credibility and the weight to be given testimony. *Lewis v. State*, 2010 Ark. App. 432. While we do not blindly accept a trial court's reliance on a witness's testimony, we may reject it only if it is "inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Id*. Potts's testimony did not rise to this level. She explained her initial naming of Darnell Anderson and later identification of appellant, and she identified appellant in court. Thus, the trial court's finding that appellant had violated the conditions of his SIS on this ground was not clearly against the preponderance of the evidence.

We can also affirm the revocation on the finding that appellant had failed to comply with his court-ordered payments. Appellant argues that he did not willfully refuse to pay because he was jailed on the revocation charge before his payments were scheduled to begin.

However, appellant is only considering his ability to pay after his release from prison for his 2011 residential-burglary conviction. He neglects to consider the restitution owed for his 2009 theft-by-receiving conviction that became payable ninety days after his release from prison. The State alleged in the petition to revoke that appellant was released from prison on February 24, 2011; thus, appellant was required to begin paying the $1492 restitution on May 25, 2011. He was not jailed on the residential-burglary charge until August 31, 2011. Appellant presented no excuse for his failure to pay while he was not incarcerated, and we hold that revocation on this ground was not clearly erroneous.

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*David L. Dunagin*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.